# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

MAURICE MITCHELL,

            Petitioner,

v.                                 Case No.: 3:19-cv-929-TJC-PDB
                                          3:16-cr-57-TJC-PDB

UNITED STATES OF AMERICA,

            Respondent.

_____

## **ORDER**

This case is before the Court on Petitioner Maurice Mitchell's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1).[1] A jury convicted Petitioner of one count of possession of a firearm by a convicted felon, for which the Court sentenced him to a term of 120 months in prison. (Crim. Doc. 82, Judgment). Petitioner argues that the evidence was insufficient to prove each element of the offense beyond a reasonable doubt and that his conviction violates Rehaif v. United States, 139 S. Ct. 2191 (2019). The United States filed a response in opposition. (Civ. Doc. 4).

After the United States filed its response, the Court appointed counsel for Petitioner to file a reply brief on the Rehaif claim. (Civ. Docs. 5, 8). Counsel for

---

[1] Citations to the record in the criminal case, United States v. Mitchell, No. 3:16-cr-57-TJC-PDB, will be denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:19-cv-929-TJC-PDB, will be denoted "Civ. Doc. __."

Petitioner filed a reply brief on January 29, 2020 (Civ. Doc. 17), to which the United States filed a sur-reply (Civ. Doc. 18). Petitioner then filed a pro se supplement (Civ. Doc. 19), in which he contends that Greer v. United States, 141 S. Ct. 2090 (2021), supports his claim of Rehaif error. Thus, the case is ripe for a decision.

Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the matter. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief). For the reasons below, Petitioner's § 2255 Motion is due to be denied.

## I.    Background

On April 28, 2016, a federal grand jury returned an indictment charging Petitioner with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Crim. Doc. 1, Indictment). Petitioner pled not guilty to the charge.

The case proceeded to a jury trial in February 2017, where the following facts were established.

> An officer with the Jacksonville Sheriff's Office was on patrol when he noticed a gold minivan driving suspiciously. Suspecting that the driver was impaired, the officer followed the van to initiate a traffic stop. The

officer activated his vehicle's blue lights to alert the driver of the van to pull over, but the driver did not stop. Instead, the driver sped up, running through several stop signs. The officer activated his emergency sirens; a high speed chase ensued. Another officer joined the pursuit. The driver of the van eventually lost control, hit a grassy median, and crashed into a grove of trees.

As the officer approached the van, he saw Mitchell get out of the driver's side of the van and run away. He eventually found Mitchell hiding underneath a black SUV in a nearby parking lot. Mitchell smelled like alcohol and burnt marijuana. Meanwhile, other officers inventoried the van. They found a loaded firearm, which had been manufactured in California, on the van's passenger-side dashboard.

United States v. Mitchell, 741 F. App'x 771, 773 (11th Cir. 2018). The jury found Petitioner guilty as charged in the indictment. (Crim. Doc. 75, Verdict).

The case proceeded to sentencing on May 31, 2017. (Crim. Doc. 95, Sentencing Transcript). The Court calculated Petitioner's sentencing guidelines range to be 151-to-188 months of imprisonment, which became 120 months because of the statutory maximum. (Crim. Doc. 95 at 63; Crim. Doc. 78, Presentence Investigation Report [PSR] ¶ 98). The Court sentenced Petitioner to a term of 120 months in prison, emphasizing that Petitioner had driven under the influence and with a firearm, leading a high-speed chase that endangered his own life and the lives of others. (Crim. Doc. 95 at 78–87). The Court also noted that Petitioner's criminal history included two separate five-year terms of imprisonment and that his § 922(g) offense occurred only three months after his release from the second five-year term. (Id. at 81–82).

3

Petitioner appealed his conviction and sentence. He argued that 18 U.S.C. § 922(g) is unconstitutional, both facially and as applied to him, because the statute exceeds Congress' authority under the Commerce Clause, and that the Court erred by applying a guidelines enhancement for possessing a firearm in connection with a felony offense. Mitchell, 741 F. App'x at 774. The Eleventh Circuit rejected Petitioner's arguments and affirmed his conviction and sentence. Id. at 774–76.

Petitioner then filed a petition for a writ of certiorari, which the Supreme Court denied on October 1, 2018. Mitchell v. United States, 139 S. Ct. 282 (2018). These § 2255 proceedings timely followed.

## II.   Discussion

Under 28 U.S.C. § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 authorizes a district court to grant relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc).

4

A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015); see also Beeman v. United States, 871 F.3d 1215, 1221–23 (11th Cir. 2017). If "'the evidence does not clearly explain what happened … the party with the burden loses.'" Beeman, 871 F.3d at 1225 (quoting Romine v. Head, 253 F.3d 1349, 1357 (11th Cir. 2001)). A § 2255 movant will not be entitled to relief, or an evidentiary hearing, "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted).

## A. Ground One

Petitioner argues that his sentence is unconstitutional because his conviction "does not rest upon proof beyond a reasonable doubt that [he is] guilty of every element of" a violation of 18 U.S.C. § 922(g).[2] (Civ. Doc. 1 at 4). He claims to be "actually innocent" of the offense "because non[e] of the evidence presented during [the] trial proves beyond a reasonable doubt that [he] actually or constructively possessed the firearm that was recovered from the abandon[ed] vehicle." (Id.). Further, Petitioner contends that none of the police officers' testimonies established that (1) he had knowledge of the firearm's

---

[2]      Section 922(g)(1) makes it "unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). Section 924(a)(2) provides that "[w]hoever knowingly violates subsection … (g) … of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." Id., § 924(a)(2).

presence in the vehicle or (2) that he intended to exercise dominion and control over the firearm that was in the vehicle. (Id.).

Petitioner's claim is a challenge to the sufficiency of the evidence. This claim is procedurally defaulted because Petitioner could have challenged the sufficiency of the evidence on direct appeal but he failed to do so. "Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citing United States v. Frady, 456 U.S. 152, 165 (1982)). "Under the procedural default rule, 'a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.'" McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (quoting Lynn, 365 F.3d at 1234). "This rule generally applies to all claims, including constitutional claims." Lynn, 365 F.3d at 1234 (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).

A petitioner can avoid a procedural default by showing either (1) cause for and actual prejudice from the default, or (2) that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. (internal quotation marks and citation omitted). With respect to "cause and prejudice," "to show cause for procedural default, [a petitioner] must show that some objective factor external to the defense prevented [him] or his counsel from

6

raising his claims on direct appeal and that this factor cannot be fairly attributable to [the petitioner's] own conduct." Id. at 1235 (citing Smith v. Jones, 256 F.3d 1135, 1145 (11th Cir. 2001)). The petitioner must also show that "actual prejudice" resulted from the claim not being raised on direct appeal. Id. at 1234 (citing Bousley v. United States, 523 U.S. 614, 622 (1998)). The second exception, actual innocence, "is exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted). "To show actual innocence of the crime of conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence." McKay, 657 F.3d at 1196 (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). The actual innocence exception is supposed to "remain 'rare' and … only be applied in the 'extraordinary case.'" Schlup, 513 U.S. at 321.

Petitioner fails to allege facts sufficient to establish cause for and actual prejudice resulting from the default. He states that he did not raise the sufficiency-of-the-evidence claim on direct appeal "because [his] attorney did not raise it." (Civ. Doc. 1 at 4). Although the ineffective assistance of appellate counsel may constitute cause to excuse a procedural default, United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000), Petitioner does not allege any facts showing that appellate counsel's failure to raise the issue was objectively

7

unreasonable or that, had counsel raised the issue, there is a reasonable probability the outcome of the appeal would have been different, see Dell v. United States, 710 F.3d 1267, 1273 (11th Cir. 2013).

Nor does Petitioner allege facts sufficient to satisfy the actual innocence exception. Although Petitioner claims to be "actually innocent" of the conviction, he does not point to any "new evidence of innocence" in light of which "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." McKay, 657 F.3d at 1196 (quoting Schlup, 513 U.S. at 327). Rather, he simply argues that the jury got it wrong. "Consequently, he has provided no basis upon which a court can second-guess the jury's verdict." Sibley v. Culliver, 377 F.3d 1196, 1206 (11th Cir. 2004). Because Petitioner has not demonstrated that he can overcome the procedural default, he is not entitled to relief on his allegations in Ground One.

Petitioner's claim lacks merit in any event. In reviewing a challenge to the sufficiency of the evidence, "the Court views the evidence in the light most favorable to the government," finding for the defendant "only if no reasonable trier of fact could have found guilt beyond a reasonable doubt." United States v. Gunn, 369 F.3d 1229, 1234 (11th Cir. 2004) (citation omitted). To prove a violation of 18 U.S.C. § 922(g)(1), "the government must prove three elements: (1) the defendant knowingly was a convicted felon; (2) the defendant was in knowing possession of a firearm; and (3) the firearm was in or affected

interstate commerce." <u>United States v. Brown</u>, 852 F. App'x 524, 530 (11th Cir. 2021) (citations omitted).

In Ground One, Petitioner challenges the sufficiency of the evidence only as to the second element: knowing possession of a firearm.

> To satisfy the "knowing" requirement of § 922(g)(1), the government must prove that the defendant had actual or constructive possession of a firearm. <u>See</u> <u>United States v. Wright</u>, 392 F.3d 1269, 1273 (11th Cir. 2004). "To prove actual possession the evidence must show that the defendant either had physical possession of or personal dominion over the [firearm]." <u>United States v. Leonard</u>, 138 F.3d 906, 909 (11th Cir. 1998); <u>see also</u> <u>United States v. Oscar</u>, 877 F.3d 1270, 1280 (11th Cir. 2017) (noting that the government must also show that the defendant "'knowingly' possess[ed] the firearm" to establish actual possession). "To establish constructive possession, the government must show that the defendant exercised ownership, dominion, or control over the firearm or the [premises] concealing the firearm." <u>United States v. Gunn</u>, 369 F.3d 1229, 1234 (11th Cir. 2004). Constructive possession can also be established by showing that the defendant had "the power and intention to exercise dominion or control." <u>Id.</u> at 1235; <u>United States v. Derose</u>, 74 F.3d 1177, 1185 (11th Cir. 1996) ("Constructive possession exists when a person 'has knowledge of the thing possessed coupled with the ability to maintain control over it or reduce it to his physical possession even though he does not have actual possession.'"). Thus, whether possession is actual or constructive, a defendant must have known that what he possessed was a firearm in order to establish guilt under § 922(g)(1).

<u>United States v. Vereen</u>, 920 F.3d 1300, 1310 (11th Cir. 2019), <u>cert. denied,</u> 140 S. Ct. 1273 (2020).

The evidence at trial was sufficient to permit a reasonable trier of fact to conclude, beyond a reasonable doubt, that Petitioner knowingly possessed a firearm. The bulk of the government's evidence came from the testimony of two police officers: Officer Brandon Alwin and Officer Matthew Rodriguez. Officer Alwin testified that he was patrolling Jacksonville's westside when he saw a

gold minivan driving erratically through an intersection. (Crim. Doc. 93, Trial Tr. Vol. I at 39–43). The minivan led Office Alwin on a chase before it crashed into some trees. (Id. at 51–65). Officer Alwin saw an individual who matched Petitioner's appearance exit the vehicle and flee on foot. (Id. at 66, 91, 100–01). Only the minivan's driver-side door was open, and only the minivan's driver-side airbag was deployed. (Id. at 69–70, 204). Officer Alwin did not witness anyone else drive or exit the vehicle. (Id. at 43, 47, 68). When officers inspected the minivan, they found a pistol laying on top of the passenger-side dashboard. (Id. at 103, 161). Petitioner's DNA matched DNA recovered from a solo cup on the minivan's floorboard. (Crim. Doc. 94, Trial Tr. Vol. II at 58–65).[3] Officer Rodriguez testified that he pursued Petitioner on foot. (Crim. Doc. 93 at 148–53). Officer Rodriguez and Officer Alwin eventually found Petitioner hiding underneath an SUV and apprehended him. (Id. at 155–61).

This evidence was sufficient to allow a reasonable trier of fact to conclude, beyond a reasonable doubt, that Petitioner knowingly possessed the firearm. The police found a firearm on the dashboard of the wrecked minivan, and Petitioner was the only person seen exiting the minivan after it crashed. Petitioner's DNA was present on a cup in the minivan as well. The gun being on the dashboard, the jury reasonably could have found that Petitioner had the

---

[3]     The government's DNA analyst found other mixtures of DNA in the minivan but could not draw any firm conclusions about the source. (Id. at 65–69)

gun within his immediate reach or control and that he knew about its presence. "The jury is free to choose among reasonable constructions of the evidence, and [the Court] must accept a jury's inferences and determinations of witness credibility." United States v. Williams, 390 F.3d 1319, 1323 (11th Cir. 2004).

Petitioner's challenge to the sufficiency of the evidence is procedurally defaulted and lacks merit. As such, he is not entitled to relief on Ground One.

**B. Ground Two: Rehaif Error**

Petitioner contends that, based on the Supreme Court's decision in Rehaif v. United States, his conviction for violating § 922(g)(1) violates his rights under the Fifth and Sixth Amendments. (Civ. Doc. 1 at 5; Civ. Doc. 17). The Supreme Court decided Rehaif v. United States the year after Petitioner's conviction and sentence became final. In Rehaif, the Supreme Court held that to convict a defendant for unlawful possession of a firearm, the government must prove not only "that the defendant knew he possessed a firearm," but also that he knew he belonged to one of the nine categories of persons that § 922(g) prohibits from possessing a firearm. 139 S. Ct. at 2194, 2200. The Supreme Court reasoned that since § 924(a)(2) provides that anyone who "knowingly violates" § 922(g) will be fined or imprisoned for up to 10 years, the word "knowingly" applies to the status element as well as the possession element. Rehaif, 139 S. Ct. at 2194, 2195–96. In so holding, the Supreme Court overturned the law of the Eleventh Circuit (and several others), which had held that the government did not have

11

to prove the defendant knew of his prohibited status. See, e.g., United States v. Jackson, 120 F.3d 1226, 1229 (11th Cir. 1997).

Petitioner argues that the government failed to prove each element of the offense beyond a reasonable doubt because the jury instructions, contrary to Rehaif, did not require the government to prove that Petitioner knew he was a convicted felon. Likewise, Petitioner argues that the indictment was defective because it failed to allege that Petitioner knew of his status as a felon. In the reply brief, filed through appointed counsel, Petitioner argues that the Rehaif errors in this case were structural because they infected the entire proceedings, such that he is entitled to relief without proving prejudice. (Civ. Doc. 17 at 3–5). Alternatively, if the Rehaif errors are subject to harmless error review, Petitioner argues that the errors were not harmless. (Id. at 5–6). The United States counters that Petitioner procedurally defaulted the Rehaif claim and, alternatively, that the claim lacks merit. (Civ. Doc. 4 at 8–16, 20–22; Civ. Doc. 18). The United States argues that Rehaif errors are subject to harmless error review and, under the facts of this case, they were harmless.

The Court need not decide whether Petitioner procedurally defaulted his Rehaif claim or whether he can overcome the default. Even if the claim were not defaulted, it fails under the harmless error standard applicable on collateral review. See Brecht v. Abrahamson, 507 U.S. 619, 637–38 (1993); see also Ross v. United States, 289 F.3d 677, 682 (11th Cir. 2002) ("In this Circuit, we apply

the Brecht harmless error standard to the habeas review of federal court convictions, as well as state court convictions." (citation omitted)).

> On collateral review, the harmless error standard mandates that "relief is proper only if the ... court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict. There must be more than a reasonable possibility that the error was harmful." Davis v. Ayala, 576 U.S. 257, 267–68, 135 S. Ct. 2187, 192 L.Ed.2d 323 (2015) (internal quotation marks and citations omitted); Ross v. United States, 289 F.3d 677, 682 (11th Cir. 2002) (per curiam) (applying this standard to a § 2255 motion). Put another way, the court may order relief only if the error "resulted in actual prejudice." [Brecht, 507 U.S. at 637] (internal quotation marks and citation omitted).

Granda v. United States, 990 F.3d 1272, 1292 (11th Cir. 2021). Notably, "[t]he burden of demonstrating in a collateral proceeding that an [error] violated the petitioner's due process rights is 'greater than the showing required to establish plain error on direct appeal.'" Galvan v. Cockrell, 293 F.3d 760, 765 (5th Cir. 2002) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)); United States v. Frady, 456 U.S. 152, 166 (1982). Therefore, if a claim would fail under plain error review, it would necessarily fail under Brecht's harmless error standard.

Here, the indictment charged that Petitioner "did knowingly possess, in and affecting commerce, a firearm, that is, a Jimenez Arms model J.A. 380 pistol with serial number 024236, after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year." (Crim. Doc. 1 at 1). The indictment cited 18 U.S.C. § 922(g)(1) and § 924(e), but it did not allege that Petitioner knew he was a felon. As a result, the indictment contained

a <u>Rehaif</u> error.

Likewise, the jury instructions, consistent with the law at the time, did not require the jury to find that Petitioner knew he was a convicted felon when he possessed the firearm. (Crim. Doc. 74, Jury Instructions at 8; Crim. Doc. 94 at 173–74). Instead, the Court instructed the jury:

> It's a federal crime for anyone who has been convicted of a felony offense to possess a firearm in or affecting interstate or foreign commerce.
>
> The defendant can be found guilty of this crime only if all of the following facts are proved beyond a reasonable doubt:
>
> No. 1: The defendant knowingly possessed a firearm in or affecting interstate or foreign commerce; and
>
> No. 2: Before possessing the firearm, the defendant had been convicted of a felony, a crime punishable by imprisonment for more than one year.
>
> …
>
> The word "knowingly" means than an act was done voluntarily and intentionally and not because of a mistake or by accident.

(Crim. Doc. 94 at 173–74). Because the instructions did not require the jury to find that Petitioner knew he was a felon, they contained a <u>Rehaif</u> error as well.

Nevertheless, contrary to Petitioner's arguments, a <u>Rehaif</u> error is not a structural error and does not warrant a presumption of prejudice. The Supreme Court and the Eleventh Circuit have clarified that <u>Rehaif</u> errors – whether in the indictment, the jury instructions, or a plea colloquy – are nonstructural

14

errors subject to plain error review on direct appeal (if unpreserved) or harmless error review (if preserved). <u>Greer v. United States</u>, 141 S. Ct. 2090, 2099–2100 (2021); <u>United States v. Leonard</u>, 4 F.4th 1134, 1144 (11th Cir. 2021).[4] The Supreme Court also held that in determining whether a <u>Rehaif</u> error affected a defendant's substantial rights under plain error review, a court may examine the entire record, not just the trial record. <u>Greer</u>, 141 S. Ct. at 2098; <u>see also</u> <u>United States v. Reed</u>, 941 F.3d 1018, 1021 (11th Cir. 2019) ("As the reviewing court[, we] may consult the whole record when considering the effect of any error on [Reed's] substantial rights." (quotation marks and citation omitted)).

Petitioner argues that the indictment failed to give notice of the elements because it did not allege that he knew he was a felon. The Eleventh Circuit has held, on similar facts, that such a defect in the indictment did not affect the defendant's substantial rights under plain error review. <u>See</u>, <u>e.g.</u>, <u>United States v. Innocent</u>, 977 F.3d 1077, 1082–84 (11th Cir. 2020); <u>Reed</u>, 941 F.3d at 1020–22. To obtain relief on collateral review, Petitioner must show "more than a reasonable possibility that the error was harmful." <u>Granda</u>, 990 F.3d at 1292.

---

[4]   "Under the plain error standard, 'there must be (1) error, (2) that is plain, and (3) that affects [the defendant's] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" <u>United States v. Moore</u>, 954 F.3d 1322, 1329 (11th Cir. 2020) (citation omitted).

Under the more defendant-friendly harmless error standard, which applies to errors that were preserved in the trial court, "the government bears the burden of showing that an error was 'harmless beyond a reasonable doubt.'" <u>Leonard</u>, 4 F.4th at 1144 (quoting <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967)).

But Petitioner cannot even "prov[e] a reasonable probability that he would have obtained a different result but for" the indictment's omission "because circumstantial evidence establishes that [he] knew of his felon status." Innocent, 977 F.3d at 1082 (internal citation omitted).

Petitioner does not seriously contend that, had the indictment alleged that he knew he was a felon, he could and would have argued to the jury that he was unaware he was a felon. To begin with, Petitioner was a convicted felon and he stipulated that he was. (Crim. Doc. 93 at 214–15). "If a person is a felon, he ordinarily knows he is a felon," a "simple truth [that] is not lost on juries" or defendants. Greer, 141 S. Ct. at 2097. Second, before he possessed a firearm in this case, Petitioner had seven prior felony convictions from three prior prosecutions: a felony conviction in 2004 for committing battery in a detention facility; felony convictions in 2005 for two counts of selling or delivering cocaine; and felony convictions in 2011 for one count of selling, delivering, or purchasing cocaine within 1,000 feet of a church or a convenience business, one count of possessing cocaine, and two counts of selling cannabis. (Crim. Doc. 1 at 1–2; PSR ¶¶ 2, 15, 42, 43, 51); (see also Civ. Doc. 4-1, Gov't Exhibit A). "[S]omeone who has been convicted of felonies repeatedly is especially likely to know he is a felon." Innocent, 977 F.3d at 1082 (citation omitted).  Third, "serving more than a year in prison provides circumstantial evidence of knowledge of felon status." Id. at 1083 (citations omitted). Petitioner served two separate five-year

terms of imprisonment: one for his 2005 drug convictions (PSR ¶ 43) and another for his 2011 drug convictions (id. ¶ 51). As the Court noted at sentencing, Petitioner committed the instant offense only three months after he was released from his second five-year term in prison. (Crim. Doc. 95 at 82). Fourth, Petitioner "behaved in a way that suggested he knew he was not allowed to possess a gun." Innocent, 977 F.3d at 1083. The trial evidence showed that when a police officer attempted to pull over Petitioner, he led police on a high speed chase and, after crashing the minivan, fled on foot. After Petitioner was arrested, he tried during recorded jail calls to pay a juvenile to tell law enforcement that the firearm did not belong to him and that Petitioner was not the one driving the minivan. (PSR ¶ 18). Petitioner also called an individual to place the name of a potential government witness on Facebook. (Id. ¶ 19). For his post-arrest conduct, Petitioner received a guidelines enhancement for obstruction of justice. (Id. ¶¶ 17–20, 23–32).

Although Petitioner speculates that he could have "called witnesses to testify concerning Petitioner's poor memory, lack of understanding or misunderstanding of the nature or length of Petitioner's prior felony convictions, and Petitioner's low IQ and mental processing," (Civ. Doc. 17 at 6), he develops no such evidence to support his claim. Indeed, Petitioner himself does not allege that he did not know he was a convicted felon. (Civ. Doc. 1 at 5). And the record is devoid of any indication that Petitioner, who has a GED and

17

had completed or enrolled in college-level courses (PSR ¶¶ 90–92), had such a memory defect that he would have forgotten about spending five years in prison only three months after being released from custody. The circumstantial evidence that Petitioner knew he was not supposed to have a gun was overwhelming. Petitioner cannot show plain error, let alone "actual prejudice," based on the indictment's failure to allege that he knew he was a felon.

The same analysis applies to the jury instructions. Although the instructions did not require the jury to find that Petitioner knew about his status as a felon, the error did not have a substantial and injurious effect on the outcome because "it is inconceivable that [Petitioner] did not know that he was a felon when he possessed the gun." United States v. McClellan, 958 F.3d 1110, 1119 (11th Cir. 2020). Although many of the facts discussed above were not presented to the jury – such as the number and nature of Petitioner's prior felony convictions and how much time he had served in prison – that is only because Petitioner stipulated he was a felon pursuant to Old Chief v. United States, 519 U.S. 172, 191–92 (1997), thereby precluding the government from introducing evidence of Petitioner's prior felonies.

> But that does not mean that the government would have been similarly prohibited had [Petitioner] actually contested the knowledge-of-status element at trial. [Petitioner] has multiple prior felonies, for which he served approximately ten years in prison. If [Petitioner were] retried, he would not be entitled to have simply a different jury instruction but with the same evidence that was presented at trial. He would instead be confronted with the evidence of his knowledge of his felonies.

McLellan, 958 F.3d at 1119. Such evidence would have included Petitioner's seven prior felony convictions, his two five-year terms in prison, the fact that Petitioner was released from prison only three months before he committed the instant offense, and all of Petitioner's actions that reflected an awareness that he was not supposed to have a gun. Where, as here, "the record clearly demonstrates that it would be implausible for the defendant to not have been aware of his felony status, a Rehaif error does not affect his substantial rights." Id. (citing Reed, 941 F.3d at 1022).

In his pro se supplement (Civ. Doc. 19), Petitioner argues that the Supreme Court's decision in Greer, 141 S. Ct. 2090, supports his claim for relief.[5] But Greer does the opposite. There, the Supreme Court sustained the conviction of a defendant, Gregory Greer, for violating § 922(g)(1) even though the district court did not instruct the jury about the need to find that Greer knew he was a felon. 141 S. Ct. at 2095–96. The Court held that "[a] Rehaif error in jury instructions is … not structural" and "fit[s] comfortably within the 'general rule' that 'a constitutional error does not automatically require reversal of a conviction.'" Id. at 2100 (quoting Arizona v. Fulminante, 499 U.S. 279, 306 (1991)). The Court further held that, in reviewing an unpreserved Rehaif error in the jury instructions, a court may consult the entire record, not just the

---

[5]    Although a party represented by counsel may not file documents pro se, see Rule 2.02(b)(3), M.D. Fla. Local Rules, the Court considers the pro se supplement nonetheless.

evidence at trial, in determining whether that error affected the defendant's substantial rights under the plain error standard. Id. at 2098. The "entire record" includes a defendant's PSR. Id. And, as the Supreme Court noted repeatedly, "common sense suggests [that] individuals who are convicted felons ordinarily know that they are convicted felons." Id. at 2095; see also id. at 2098. The Court explained:

> In a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily knows he is a felon. "Felony status is simply not the kind of thing that one forgets." 963 F.3d 420, 423 (CA4 2020) (Wilkinson, J., concurring in denial of reh'g en banc). That simple truth is not lost upon juries. Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant <u>knew</u> he was a felon based on the fact that he <u>was</u> a felon.

Id. at 2097 (emphasis in original).

The Supreme Court concluded that Greer had failed to carry his burden of showing a "reasonable probability" that the outcome of trial would have been different but for the <u>Rehaif</u> error in the jury instructions. Id. at 2097–98. The Court pointed to the fact that Greer, like Petitioner, had multiple prior felony convictions, which was "substantial evidence that [he] knew [he was a] felon[]." Id. The Court also pointed to the fact that Greer, like Petitioner, never disputed the fact of his prior felony convictions and he stipulated that he was a felon. Id. at 2098. Further, Greer had failed to "argue[] or ma[k]e a representation that [he] would have presented evidence at trial that [he] did not in fact know [he

was a felon] when [he] possessed [a] firearm[].” Id.

Here, as in Greer, Petitioner has made no showing that the Rehaif errors in the indictment or the jury instructions affected the outcome. Under Supreme Court and Eleventh Circuit precedent, the errors would not have risen to the level of plain error, and therefore they necessarily do not justify relief on collateral review. See Frady, 456 U.S. at 166 (“We reaffirm the well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist [under plain error review] on direct appeal.”). Relief on Ground Two is due to be denied.

### C. Motion to Amend (Crim. Doc. 121)

Although not related to the § 2255 Motion itself, Petitioner filed a “Motion to Amend” in the criminal case, in which he asks the Court to amend the PSR. (Crim. Doc. 121). As a juvenile, Petitioner received a misdemeanor conviction for an attempted lewd or lascivious act (PSR ¶ 34), which in turn caused the BOP to apply a “Public Safety Factor” designation to Petitioner (see Crim. Doc. 121-1). Petitioner asks the Court “to amend his Juvenile Record out of his P.S.R.” because his juvenile record is hindering his ability to participate in vocational training and other programs offered by the BOP.

The Motion to Amend is due to be denied because the Court lacks authority to amend the PSR at this stage. Under Federal Rule of Criminal Procedure 32, “[w]ithin 14 days after receiving the presentence report, the

parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." Fed. R. Crim. P. 32(f)(1). Here, the Probation Office issued the initial PSR on April 26, 2017, and neither party objected within 14 days to the information about Petitioner's juvenile record. The Court sentenced Petitioner on May 31, 2017. Petitioner did not file the Motion to Amend until July 2021, more than four years after sentencing. As such, the time to file objections to the PSR has long since passed. Petitioner points the Court to no authority that would allow it to alter or remove information from the PSR at this point. Nevertheless, the Court will reiterate its recommendation to the BOP that Petitioner enroll in the Residential Drug Abuse Treatment Program (RDAP) and that he participate in any available educational and vocational programs. (Crim. Doc. 82 at 2).

### IV. Conclusion

Having considered each of Petitioner's claims, and finding that none warrants relief under 28 U.S.C. § 2255, it is hereby **ORDERED:**

1. Petitioner Maurice Mitchell's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1), as supplemented (Civ. Docs. 17, 19), is **DENIED**.

2. Petitioner's Motion to Amend the PSR (Crim. Doc. 121) is **DENIED**. However, the Court continues to recommend to the BOP that

Petitioner be allowed to enroll in RDAP and to participate in any available educational and vocational programs. (Crim. Doc. 82 at 2).

3. The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the file.

4. If Petitioner appeals this Order, the Court denies a certificate of appealability (COA). Because this Court has determined that a COA is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[6]

**DONE AND ORDERED** at Jacksonville, Florida this 3rd day of January, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

lc 19
C:
Counsel of record
Pro se petitioner
Warden, Terminal Island FCI

---

[6] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

23